Good morning, Your Honors. Scott Claus for the Appellant Clause of 75 Shopping Center, LLC. This is an eerie case, so this Court has to apply Arizona law. And to borrow a phrase used by the Arizona Court of Appeals, the law in Arizona is crystal clear that an option must be strictly construed and that it must be exercised in exact accord with its terms and conditions. That has been the law of Arizona since the days of its Territorial Supreme Court in Monahan v. Wakeland, 113 years ago. So in this instance, we're going to construe the option which was in the agreement, correct? Yes, Your Honor. We're not going to construe what was said to try to take advantage of it. We're only going to construe the option. Your Honor, Arizona law, as recently articulated as two months ago, re-articulated, requires both the option itself, the language of the contract, to be strictly construed, and then another step of strict adherence is required, and that is compliance with the terms of the option. Well, I understand, but the compliance is with the strict construction. We have to make sure that in order to do what you need to do in order to take the option, that you strictly comply. Isn't it true that if the last sentence were not in the early termination notice, it would be valid? That is not true, Your Honor, because it would be. So you're suggesting that this option requires someone to say when they will be gone? It does, Your Honor, by its expressed terms. Why does it say that? It seems to me that it says you've got to send in the notice 120 days from the end of the 60th month, and then it says you can give there – you can be there for 120 days to 270 days. But I don't see any language that says how – when you – that you have to give them any notice of how long you want to be there. With all due respect, Your Honor, that is not what Section 3C of the lease says. Well, let's look at it. What does it say? Sure. It says that so long as revenue conditions are met, and I'm quoting, then tenant may terminate this lease by doing one thing. No, no. Keep reading. Yes, by giving to landlord no less than 120 and no more than 270 days written notice of termination. If, as Your Honor suggests, the notice did not contain a date, it would not be legally and it would not be linguistically giving to the landlord notice of termination. Why? Because the landlord would not know if the termination of which it was being notified was one day, 120 days, 150 days. Well, it seems to me it would be absolutely clear. If there's nothing in there about when it was going to exactly terminate, the tenant only has to pay rent for 120 days and may stay up to 270 days having to pay rent all during that time. It doesn't seem to me to say anything in there that says, oh, and you have to tell me when you're getting out of here. Your Honor, there appears to be in your question a conflation of the notion of tenancy and termination of the lease. In Arizona, under Arizona law, tenancy and a termination of the lease are separate. And with due respect, Your Honor, Section 3C of the lease contains not one whit of language regarding rent. It does not say that so long as the tenant pays rent until X date, the tenant may terminate the lease. I would agree with you about that, but it would seem to me that, and I guess I'm trying to see where in this language it says you've got to put in when you're going to get out. It just seems to me that you've got to give the notice within 120 days of the end of the 60th month, which was modified and said it had to be no later than October 28. But then it says nothing more. So I'm trying to say, what does this one no less than 120, no more than 270 mean? And I'm having a tough time understanding that that means you must tell me when you're going to quit. And again, Your Honor, the question, you use the language, tell me when you're going to get out. That's not how the tenant exercises the option under Section 3C. It is not an option to vacate the premises. It is an option to terminate the lease. Which must be given 120, not more than 120 days before the 60th month. Suppose the notice didn't specify any date for vacating the premises. Would that change the case? It would. It would.  Change the result. It should change the result, just as the deficiency in the notice that was provided should change the result. If the tenant did not provide notice of termination, that is the only thing that the tenant was required to do in order to exercise the option, provide notice of termination. If the tenant does not provide notice of when it is terminating not its tenancy, Your Honor, terminating the lease, if the tenant does not provide notice of its termination of the tenancy 120 days to 270 days after the notice, then the notice by law, under Arizona law, is manifestly defective. Who wrote this lease? It is not clear from the record, Your Honor. And I don't want to venture outside of the record. But if one looks at the lease and if one looks at the trailers for the lease, well, Your Honor, I don't want to answer your question because it goes outside of the record. It is not developed in the record who wrote the lease. And in any event, if you look on the record. And in any event, the lease by its terms demonstrates that there is no reading against the drafter. And in Arizona, the reading against the drafter when it comes to commercial leases is not the policy nor the law of the State of Arizona. No. I thought it was. I thought Central Housing Investment Corp. versus Federal Mortgage Insurance Association says just exactly that. A contract is construed most strongly against the party who prepared it. In commercial lease settings, Your Honor, it is not the policy of the State of Arizona to construe against the drafter. And in any event, the record is bereft of any indication of who the drafter of the lease is. What we do know is that the policy in Arizona is that options are strictly construed and that they must be adhered to strictly. We also know from the lease itself that this was a term of 10 years and the tenant was given an opportunity. The tenant was given an option to terminate the lease less than its natural term by doing one thing, and that was by giving notice of termination. And we know from the termination notice that was provided that the tenant did not provide at least 120 days of notice of termination. Well, there's no question there was notice of termination. You quell whether it was effective because it specifies a date that turned out to be 108 days away. Your Honor, and that is the law that is recognized not just in Arizona, but in all states. But I haven't found any facts, any cases with facts remotely close to this. Most option cases involve options to acquire property and they involve options to acquire, for example, payment of money. And the guy doesn't pay the money. He just purports to exercise the option. No money, no option. What's the closest case you can find to facts like this? Your Honor, the – in Arizona, you are correct. There are no cases that fall within this particular fact pattern, but the Dubois case out of New York. The Dubois case, which is cited in our brief, states that it is a notice case with exactly the same time requirement. On May 28, 1946, the owner purporting to act under Clause 39 served the notice upon the tenant. The notice on its face shows that it failed to give not less than 120 days advance notice. Also, Your Honor, that's from 1948, the Olympia Properties case, which is a much more recent vintage. The Olympia Properties case is a notice case. It is the failure to timely give notice of the cancellation of the lease under the option in that lease to terminate, which rendered the notice defective under the same principles of strict compliance that are adhered to by the Arizona courts. The Olympia Properties case, real quickly, is that in your brief someplace or – oh, there it is.  Got it. Yes, Your Honor. The Olympia Properties case is both cited and in the opening brief and in the reply brief, and the importance of the Olympia Properties case not only shows that it is factually analogous to this case and demonstrates that the failure to give an adequate notice renders the exercise of an option to terminate. I'm just reading your description of the Olympia Properties case. It says the early termination option required the tenant to give the landlord written notice of its intent to cancel and, and it's underscored in your brief, to pay a cancellation fee by September 1st. Didn't pay the money. No, Your Honor. Actually, in Olympia Properties, the money was tendered. The money was tendered and the money was accepted. Olympia Properties is an interesting case, Your Honor. In Olympia Properties, the court was – the entry of summary judgment was reversed because the tenant averred that it sent the termination notice on August 20th. The notice had to be given by September 1. The tenant swore an affidavit that it gave the notice on August 20th. The tenant's employees swore an affidavit that the notice was given on August 20th. The tenant produced to the court a FedEx receipt showing that the landlord received a FedEx envelope on August 22nd. But because the landlord disputed the receipt of the notice by September 1 and stated that the notice was not actually received until September 13, 107 days – not 108 days, but just based on the landlord's testimony that the notice was not received despite all of the evidence from the tenant, the Olympia Properties court determined that summary judgment was not appropriate because there was a factual issue as to whether or not the notice was actually sent and actually timely received. Olympia Properties is only a case about notice, Your Honor. And in this case, there is no dispute that the notice that was actually sent was only sent 108 days prior to the date of termination provided in the notice, as the DuBois court recognized that notice was defective on its face. There is no factuality. When I read the cases which you cite in your brief, while it seemed to me that they do say something to help you, the worry that I had is that I couldn't find something that said directly on point whether a notice termination must state a termination date within the number of days required in the early termination provision. And it doesn't say whether a termination notice stating a date less than the required number of days is invalid. I'd like to answer your question, Your Honor, in reserve whatever time I have left for rebuttal. I'm going to answer your question with a question that has to be answered by Big Lots in order to prevail. When was notice given that the lease would terminate on February 12, 2009? The answer to that question is never. And because Big Lots did not give notice that the lease would terminate on February 12, 2009, it did not comply with the only requirement it had to exercise the option to deprive my client of $1.5 million in rent. And I'm going to reserve the rest of my time for rebuttal. If you may. Thank you. Roberts. Good morning. May it please the Court. A question was asked earlier regarding perceptions against the drafter, construction against the drafter. I'd direct the Court to paragraph 35 of the lease, which I believe is ER 14, that there is no presumption against the drafter. I'm curious if my inference is correct. My guess is this is a Big Lots draft because it specifies the name of the document at the bottom and the path of the document, Phoenix Plaza 75. If you don't know, don't tell me. I'm just curious if my inference is correct. I don't know, Your Honor. Okay. Fair enough. Importantly, the district court found that the lease and the letter agreement do not specify the form or content of the termination notice. The lease merely requires 120 days' written notice of termination. Defendant provided written notice 120 days before it terminated the lease by ending its rent payments. Further, even so when it gives its termination notice, it does specify a different date that doesn't qualify. The question which your opposing colleague wants to pose is when did Big Lots give the notice of termination on February the 12th, whatever date it was? Well, I could answer that question, Your Honor, but I think it is beyond the record before this Court. Well, if the record shows no notice of termination of February 12th, I mean, what are we supposed to take of that? Well, it's those are two different issues, I think, Your Honor. When you're construing the term in the lease, the termination provision, there is not a requirement in that provision that requires that an effective date be included. And the Court very well might be aware that other provisions within this lease do specifically identify when a notice is required to give an effective date. And this Court should be aware that Arizona law strongly favors enforcing contracts as drafted and giving full weight to the intent of the parties. And when they have the ability and demonstrate their intent to draft a provision, and that provision is Section 4C, to include that such notice should include an effective date, they have the ability to do so. Just conceptually, I'm not sure what you'd do. Suppose you have a termination notice that specifies no date. Take the one here and it didn't have the reference to January 30th, 31st, whichever it was. What's the landlord supposed to make of that? He's got a tenant who's going to terminate the lease, but you've got like a five-month range of time. That doesn't seem very logical, that the landlord is supposed to hang in limbo, not knowing to when the person is actually going to move out. Well, that presumes that the parties have no ability to communicate. What they did in this situation is draft a very specific contract. In certain situations, effective date required. On others not. We give you a range. Okay. I'm just wondering, is a termination at some time, is the date of termination perhaps a necessary element to terminate? If you're going to terminate a lease and you're plainly not talking about, I mean, okay, I'm renting an apartment. I'm moving out. I'm terminating the lease. And it's expected to be now. But can you say I terminate the lease and not tell the landlord, but I really mean it's going to be six months from now? Is that an effective termination? It very much depends on what the contract says. These parties agree. Well, they have a contract that provides a range. Agree. So by definition, it doesn't mean when I say I'm canceling, I'm terminating the lease, it doesn't mean today or tomorrow. It means some point in the future in this range of about five months. Isn't it logical to infer that you've got to have notices as to when the termination is going to be in order to have an effective termination? No. Ultimately, the parties are able to communicate and decide upon when that shall happen. We're talking here about and Big Lots does disagree that this is an option. But leaving that argument to the side, if it is going to be construed as an option and therefore strictly construed, the language must be strictly construed. And in this situation, it allows for a period of 150 days, between 120 days after notice and 270 days for the parties to collect themselves, figure out what repairs need to be done, what other items need to be addressed before there is actually a termination. So in this situation, when the provision does not require an effective date be stated in the notice, and all that is required pursuant to the term that's being exercised, is that the tenant terminate this lease by giving to landlord no less than 120 days, no more than 270 days, written notice of termination. As even identified in the reply brief, in the clause of 75's reply brief, it is the notice of intent that is communicated and adequately communicated in this situation. But can one communicate a notice of intent to terminate in a manner inconsistent with the contract, namely, I'm leaving before 120 days? Well, in this circumstance, it is not inconsistent with the contract. The contract itself, again, citing the court to Section 4C of the lease, says that in given circumstances, specifically, if it is not economically justifiable to continue to operate in the premises, it may close the premises. And indeed, it did. It wasn't meeting its revenue expectations. It vacated the property on January 29, but continued to pay rent. And what were its obligations under the lease? Included paying rent, but allowed it to vacate the property. So in that situation, it was entitled to do precisely as it did. Why is this case different than Dubois? I don't think Dubois deals with the effectiveness of the notice itself. It isn't – it does not turn upon the language in the notice itself and the content as dictated by the provision. It is a – it is an issue of timeliness. And there is no dispute, either in the district court or here before this Court, that it was – the notice itself was timely provided. The date itself, inadvertently, was miscalculated by mistake and created a different scenario. Here, that's not the situation. The situation here is notice and full performance was timely done on October 15, 2008. As such, the provision was executed. What about National Alfalfa? I'm sorry, Your Honor, I'm not familiar with that. Okay. Well, we did a little extra research. There's a case, National Alfalfa Dehydrating and Milling Company v. 4010, Washington, Inc., a Missouri case. But if you've not seen it, that's fine. My apologies, Your Honor. So, Your Honor, Big Lot's contention, as it was below and is here today, is that if it did strictly comply with the term required in the termination provision, specifically, what are the three things that are required? It timely gave notice. It timely gave notice consistent with the letter agreement before October 28, 2008. It also gave written notice of its intent to terminate, and it did. And the third requirement is that ultimately the lease was terminated. It did pay rent and fulfill its obligations under the lease for at least 120 days, less than 270. Scalia. But what didn't the letter say? Not simply we're leaving. The lease shall terminate effective January 31. It couldn't be terminated consistent with the contract on that date. Indeed, you're correct. It was an inadvertent error, a miscalculation of the date, and surplusage. It was not anything that was required in the notice. It does not impact the effectiveness of the notice. What was the notice required to provide? Notice of the intent to terminate. And the intent to terminate, as Clause 75 acknowledges, is what was required when that termination is going to actually be effective, is not required under the  contract. It may not be, but at least facially, Big Lots would seem to be terminating in a manner that's inconsistent with the contract. And that mistake is certainly there, Your Honor. There's no arguing the point that the language is there. The date was mistakenly calculated, and Big Lots thinks that, you know, when you look at that scenario as well, it should be relieved of that mistake through the equitable considerations of the court. Everything was complied with in this situation. And in Andrews v. Blake, Arizona Supreme Court found in certain circumstances one who didn't provide proper notice could be excused. And this excuse recognized by the Arizona Supreme Court included mistake. And in Andrews v. Blake, the Court favorably cited Duncan v. GEW for the concept that excusable excuse should be recognized when a tenant had misread a lease, understanding that no notice was required in circumstances where notice was required. And the Arizona Supreme Court has found, or at least cited favorably to this Duncan v. GEW case, that in such circumstances that excuse, that equitable excuse is appropriate. Kennedy, is it true that if I read this provision as you've read it, your client should be responsible to the landlord for at least 120 days of rent and maybe 270 days of rent, since no agreement was made when to quit? Yes, Your Honor, that would be a fair reading. Had the parties adhered to the terms of the contract, which indeed provides a very fair reading to both parties, that 120 days and not more than 270, that what you have before you, Your Honor, in the record before this Court is not the precise communications of what transpired post notices. But given the record before this Court, there is some ambiguity as to exactly what damages would be owed, if any. And when I say damages, I mean specifically rent. What is before this Court is that 120 days of rent was paid. The property was to me, if I buy your argument and you give the notice within the 120 days, you at least have to pay for 120 days, and you can be you can suggest on your own effect that you want to be there for 270 days, correct? Agreed. And we did pay 120 days' rent. But I'm not reluctant to argue that. But when? Okay. Your Honors, also, Big Lots would encourage the Court to consider the fact that this indeed is not an option. There seems to be a presumption in the arguments presented by Plaza 75 that this indeed is an option. Big Lots encourages the Court to review from a different vantage point. First, what is the definition of an option? The California Court of Appeals in a March 15, 2012 decision in Superior v. Home Depot, a case in which it found that a termination, lease termination provision is indeed not an option, defined an option as a right acquired by contract to accept or reject a present offer within a limited time in the future. It went on to say that it is a contract made for consideration to keep an offer open for a prescribed period of time, citing Wittgen. Arizona law and the restatement are the same. In fact, Restatement of Property 2nd.1.7 deals with tenancy that is terminable on some event. Very similar case situation to the case before the Court. That section doesn't invoke the contractual notion of option and doesn't say anything about strict construction. Ultimately, the exercise of an option results in a contract. It is an open offer that results in a contract. And again, focusing the Court's attention on the fact that this is Arizona law. There is no Arizona law on the topic of a contractual right to terminate. Clause 75 would have you construe that as an option. We suggest by its very definition, an option is an offer open subject to acceptance. There was no offer here that was open. Well, the analogy is, I mean, it's not the same, but the analogy is not a long stretch because it's a one party has a set option. One party has a choice to go one direction or the other. It's a unilateral. So in that sense, there is an offer open to big lots to terminate the lease. And big lots has to decide whether it's going to accept that offer or exercise that option. There are other, the ramifications are different, but I don't have difficulty seeing the analogy. Well, I agree with the Court's initial description that there is an option in the colloquial sense, and that is, we use that term to say you have a choice. Because you have a choice does not mean it is indeed an option contract. But it is, well, in the sense of it's entirely up to big lots. The terms are defined in the same way that in a purchase of property there's an offer. Well, in this case, there's something of an offer to terminate, and big lots has a choice of saying, yes, I'll do that, or, no, I won't. And to continue the analogy, the idea is, well, if you have what amounts to a unilateral choice, you need to strictly comply with the terms of that choice. And your main argument is you have, but now on this question of whether the analogy fits, I understand there are differences, but I understand there seem to be there are some similarities, too. I'm not arguing that there are no similarities whatsoever. The two distinctions that I would draw, one is that an option, an open offer, results in a bilateral contract. There is no bilateral contract that results here. I mean, a contract of termination. Again, there is no terminate, there is no contract of termination. You're going out of the tunnel instead of going into the tunnel. Okay. I understand. I hear you. Good point. And there's a contingency here that is not the responsibility or in control of big lots. Secondarily, But you would agree, would you not, that the quote, unquote, optioner in this situation is bound when your client decides what to do? Yes. And as I read Andrews, it seems to me that that's what Andrews is really talking about. If the person or the party is bound while your client is free to accept or not as he chooses, then at that point, it seems the Arizona law wants strict construction of that particular phrase. They called it an option in Andrews, but I'm having a tough time understanding the difference. Well, I do say that. I appreciate that one is a contract, one isn't. But I'm just trying to point out that it doesn't seem to me they have any way to wiggle, and you are free. In those situations, Arizona seems to, for me, to give it strict compliance. In one circumstance, Your Honor. But again, it doesn't reach that point. And in this situation, at the time the contract was written, my client didn't have the ability to exercise that. It was based upon a condition over which it had no control, and that was sales meeting or exceeding a certain number. I do recognize my time is over, but there also is 3B and 3C where the parties do demonstrate their intent to create an option in 3B to renew terms, precisely what is throughout the cases, and then secondarily, this kick-out clause, which doesn't refer to an option, nor is it intended to. And again, Arizona law strongly encourages that we give meaning to the terms and language utilized by the parties. Thank you, Your Honors. Thank you. Mr. Claus. Thank you, Your Honors. As was predicted, Big Lots was unable to answer my question about when it gave notice that it was terminating the lease as of February 12, 2009. That is fatal to its position. The case cited by Your Honor, National Alfalfa Dehydrating, states, a notice to terminate pursuant to a cancellation provision must be so certain that it cannot be reasonably understood and that if a particular date is named in the notice, such date must be the date that was given in the notice in this case was not a date upon which Big Lots had the opportunity to terminate the lease. Again, Your Honors, the option required one thing, a notice of termination. Section 4C has nothing to do with Section 3C. Section 4C permitted Big Lots to vacate the premises but still required Big Lots to satisfy all other terms of the lease. Your Honor, Big Lots admits and admitted today that the date actually given in the notice, the date of termination actually given in the notice was a mistake and cites this court to Andrews v. Best. I would ask this court to review footnote 6 of Andrews, which states precisely and categorically that an error or omission, as it was characterized by counsel, is not a mistake that allows a court to give an equitable remedy for strict compliance. Instead, the party seeking an equitable remedy must plead it and must prove it. And here, the record is bereft of any pleading of an equitable remedy and it is bereft of any demonstration of proving the availability of that equitable remedy. Finally, Your Honors, it is an option, as Your Honor recognized under the definition of an option, not just in Andrews but in University Realty, and even if the court was going to do that, it would be an exception. Section 38 of the lease contains a time is of the essence provision, which states that time is of the essence concerning all provisions that have a date in them, in the lease. This lease required 120 days at least notice of termination and not 108 days. One hundred and twenty days notice of termination was not given. Summary judgment should be directed to be entered for Clause 75. Thank you, Your Honors. Thank you. We thank both counsel. The case just argued is submitted. That concludes the argument calendar for today. Thank you. All rise.
judges: Selna, Clifton, Smith